UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SCOTT LAURENCE GELMAN,<br><br>　　　　　　Plaintiff,<br><br>-against-<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　　Defendant. | **MEMORANDUM AND ORDER**<br>Case No. 2:24-CV-6353 (FB) |

*Appearances:*
*For the Plaintiff:*
DANIEL ADAM OSBORN
Osborn Law, P.C.
43 West 43rd Street, Ste 131
New York, NY 10036

*For the Defendants:*
MOLLY CARTER
HUGH DUN RAPPAPORT
MORRIS WILLIAMS , III
SSA – Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

**BLOCK, Senior District Judge:**

　　Plaintiff Scott Laurence Gelman seeks review of the Commissioner of the Social Security Administration's ("the Commissioner") denial of his application for Social Security Disability Insurance benefits under Title II of the Social Security Act. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Gelman's motion is DENIED and the Commissioner's motion is GRANTED.

　　　　　　　　**I.　Background**

In October 2018, Gelman was involved in a car accident and sustained various injuries. Tr. at 710, ECF No. 10.[1] Gelman subsequently attempted to return to his job as a bus driver but left work after three weeks, claiming that his injuries prevented him from operating the bus. *Id*. Gelman has not worked since November 2018. *Id*. at 709.

Gelman applied for Social Security Disability Insurance benefits, alleging disability as of November 6, 2018. *Id*. at 15. Gelman claims that he suffers from neck, back, and right hip pain and has difficulty with many common motions and activities, including sitting, standing, walking, and bending over. *Id*. at 57, 62–64. Gelman has primarily treated his injuries through physical therapy. *Id*. at 58–60.

Following an initial denial of his claims, Gelman filed a request for a hearing, and in a December 2021 decision, an administrative law judge ("ALJ") found that Gelman was disabled as of January 14, 2021, but not before. *Id*. at 15, 28. The ALJ found that Gelman suffered from degenerative disc disease of the cervical and lumbar spine and degenerative joint disease of the right hip, but that there nevertheless existed jobs that Gelman could have performed. *Id*. At 18, 27. The ALJ concluded, however, that when Gelman turned 55 on January 14, 2021, he

---

[1] The Commissioner filed the administrative transcript of the proceedings before the Social Security Administration at ECF No. 10. All references to ECF No. 10 are denoted as "Tr. __."

became an individual of "advanced age" under 20 C.F.R. § 404.1563(e) and was then disabled. *Id.* at 28.[2]

Gelman sought review of the ALJ's decision in U.S. District Court and, following remand, the ALJ held a new hearing to reexamine whether Gelman was disabled prior to January 14, 2021. *Id.* at 753–73.[3] The ALJ, in a June 2024 decision, again found that Gelman was not disabled prior to January 14, 2021. *Id.* at 686–98. Following a thorough review of the record, the ALJ concluded that Gelman maintained sufficient residual functional capacity such that jobs had existed which he could have performed. *Id.* at 691–98. The Appeals Council denied review of the ALJ's decision and Gelman thereafter commenced this action.

## II.   Discussion

District courts reviewing the Commissioner's determinations under 42 U.S.C. § 405(g) must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been

---

[2] The disability analysis is different for individuals "of an advanced age," defined as over 55. 20 C.F.R. § 404.1563(e). For persons of advanced age, a finding of disability is warranted if they have a severe impairment limiting them to light work, can no longer perform their past relevant work, and do not have skills that are transferable to other skilled or semiskilled work. 20 C.F.R. § 404.1568(4); 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ discussed this only briefly, but concluded that once Gelman attained advanced age, his skills were not transferable to other work. Tr. at 26–28. Gelman's lack of transferable skills meant he could not find work in the national economy and he was thus disabled. *Id.*

[3] The portion of the ALJ's December 2021 decision concluding that Gelman was disabled as of January 14, 2021, was left in place and is not before this court. Tr. at 772–73.

3

applied."[4] *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). They may not conduct a *de novo* review or substitute their judgment for that of the ALJ, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), reversing the ALJ "only if the factual findings are not supported by substantial evidence or if the decision is based on legal error," *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

The Commissioner employs a five-step inquiry to evaluate Social Security disability claims. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At step one, the ALJ found that Gelman had not engaged in substantial gainful activity from the alleged onset date through January 14, 2021. Tr. at 689. At step two, the ALJ concluded that Gelman's cervical and lumbar degenerative disc disease with right hip degenerative joint disease qualified as severe impairments, but that Gelman's mental impairments, including post-concussion syndrome, anxiety, and depression, did not qualify as severe impairments. *Id.* at 689–90.

---

[4] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments, specifically Listings §§ 1.15, 1.16, and 1.18. *Id*. at 690–91.

At step four, the ALJ conducted a residual functional capacity ("RFC") analysis. *Id*. at 691. The ALJ concluded that Gelman lacked the RFC to perform his past relevant work as a bus driver. *Id*. At 696. The ALJ found, however, that Gelman had the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b)[.]"[5] *Id*. at 691. The ALJ reviewed Gelman's medical records and the opinions and testimony of various physicians to conclude that "while the treatment records suggest some exertional limitations, the evidence of record fails to establish limitations or restrictions that would preclude all vocational activities." *Id*. at 691–96.

At step five, considering Gelman's "age, education, work experience, and residual functional capacity" at the relevant time as well as the testimony of a vocational expert, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Gelman] can perform." *Id*. at 697.

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

5

Accordingly, the ALJ concluded that Gelman was not disabled from November 6, 2018, through January 14, 2021. *Id.* at 698.

Gelman now contends that the ALJ erred in concluding that he was not disabled prior to January 14, 2021 because (1) the RFC determination was not supported by substantial evidence; and (2) the vocational expert's testimony, and thus the ALJ's conclusions in reliance thereon, were not supported by substantial evidence. The Commissioner argues that (1) substantial evidence supported the ALJ's RFC determination; and (2) substantial evidence supported the vocational expert's testimony. The Court now concludes that substantial evidence supported the ALJ's determination, which is free from legal error, and thus affirms.

a. RFC Determination

Gelman contends that the ALJ erred at step four by (1) relying on the opinions of non-examining physicians over those of Gelman's treating physician; (2) failing to conduct a proper credibility analysis; and (3) failing to properly assess Gelman's ability to perform work activities. The Court addresses each of these contentions and concludes that the ALJ's RFC determination was supported by substantial evidence.

A claimant's RFC represents the most they can do despite any limitations based on all evidence in the record. 20 C.F.R. § 404.1545(a)(1). In making its determination, the ALJ correctly followed a two-step process. Tr. at 691; *see* 20

6

C.F.R. § 404.1529(a). First, the ALJ assessed whether any medically determinable impairments could reasonably be expected to produce Gelman's symptoms. Tr. at 691. Second, the ALJ assessed those symptoms to determine the extent to which they limited Gelman's work-related activities. *Id*.

The ALJ concluded that Gelman's injuries could reasonably be expected to produce his symptoms, but that Gelman's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." *Id*. at 692. The ALJ concluded that "the evidence of record fails to establish limitations or restrictions that would preclude all vocational activities. While the claimant testified that he felt unable to perform his work as a bus driver, he did not suggest that he could perform no other work." *Id*. The ALJ made this determination based on reports from Gelman's treating physicians and physical therapists, the hearing testimony of Dr. Sanjay Krishnan, an impartial medical expert, and evaluations and assessments by State Agency Medical Consultants Dr. R. Dickerson and Dr. V. Au.

Gelman contends that the ALJ improperly relied on the opinions of non-examining physicians, the state agency consultants Drs. Dickerson and Au, over those of his treating physician, Dr. Andrea Pollack. The ALJ, however, "was not required to give special deference to the opinion of his treating physician." *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023).

7

The treating physician rule, which gave controlling weight to a treating physician's opinion, was abrogated by regulation in 2017. *Id.*; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). As such, the treating physician rule does not apply to applications filed after March 27, 2017. *Alfonso v. Comm'r of Soc. Sec.*, No. 20-CV-03914 (LDH), 2022 WL 219575, at *5 (E.D.N.Y. Jan. 20, 2022).

Under current regulations, an ALJ is not required to defer to any given medical opinion and must instead evaluate the persuasiveness of medical opinions based on the factors set forth at 20 C.F.R. § 404.1520c, the most important of which are supportability and consistency. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5853 ("These final rules help eliminate confusion about a hierarchy of medical sources and instead focus adjudication more on the persuasiveness of the content of the evidence."); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (Noting that analysis under the new regulations is similar to the treating physician rule because, "under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned."). Therefore, the ALJ was not obliged to give controlling weight to the opinion of Gelman's treating physician over

others and the ALJ properly analyzed the medical opinions based on the 20 C.F.R. § 404.1520c factors. *Rushford*, 2023 WL 8946622, at *1; Tr. at 691.

The ALJ took note of Dr. Pollack's opinion that Gelman "had a moderate restriction in squatting, marked restrictions in bending, lifting, carrying and moderate restrictions in pushing, pulling, walking, standing, climbing stairs and kneeling with mild restrictions in sitting and reaching." Tr. at 694. The ALJ explained, however, that this was partly contradicted by other consultative exams which "include[d] reference to a wide range of daily activities," as well as by orthopedic exams which "were mostly unremarkable and included findings that the claimant was neurologically intact, [maintained] normal reflexes, . . . [maintained] full muscle strength in the lower extremities, [and] could heel toe walk and had an intact tandem gait with a good range of motion in the right hip[.]" *Id*. at 692. The ALJ also found it notable that Gelman received only "conservative care that involved physical therapy that included references to progressing and tolerating treatment well," that Gelman declined to receive recommended injections, and that he was not a candidate for surgery. *Id*. at 696. The ALJ concluded that, because of the inconsistency between Dr. Pollack's opinion and the record, he found Dr. Pollack only "somewhat persuasive." *Id*. at 694. This analysis appropriately addressed the 20 C.F.R. § 404.1520c supportability and consistency factors.

9

The ALJ instead found Dr. Sanjay Krishnan, the impartial medical expert, to be more persuasive. *Id*. at 696. Dr. Krishnan reviewed Gelman's medical records and opined that "during the relevant period, the claimant could lift/carry and push/pull twenty pounds occasionally and ten pounds frequently, sit and stand/walk six hours each in an eight-hour workday, occasionally perform all postural activities and never climb ladders, ropes and scaffolds." *Id*. at 695, 713–15.

Contrary to Gelman's assertions, the ALJ did not rely on his lay interpretation of the medical evidence over that of the experts; Dr. Krishnan's testimony directly supported the ALJ's findings. *Id*. at 695–96. As Gelman himself notes, Pl.'s Mem. Supp. J. on the Pleadings 19, where the opinion of medical experts conflicts as to the extent of a claimant's capacity or disability, it is within the sound discretion of the ALJ "to choose between properly submitted medical opinions." *McBrayer v. Sec'y of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983). The ALJ appropriately analyzed the supportability and consistency of the medical evidence and did not err by discounting Gelman's physician's opinion in favor of the impartial medical expert.

Gelman also asserts that the ALJ's reliance on Dr. Dickerson's and Dr. Au's opinions was improper because Dr. Dickerson produced a report in January 2020 and Dr. Au produced a report in March 2020 and, thus, neither doctor had Gelman's subsequent medical records through January 2021.

10

Remand may be appropriate when an ALJ relies on the opinions of a non-examining physician who made an assessment without a claimant's entire medical record if the entire medical record might have altered the physician's conclusions. *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010). Here, however, the ALJ relied on the opinion of Dr. Krishnan, who testified at the June 2024 hearing and who was able to review Gelman's entire medical record. Tr. at 695–96, 713–15. And Dr. Krishnan's opinions aligned with the opinions of Drs. Dickerson and Au. *Id*. at 695–96. The ALJ also reviewed and discussed Gelman's physical therapy records through September 2021. *Id*. at 692. Accordingly, the ALJ's consideration of two assessments made without Gelman's complete medical records does not render the decision unsupported by substantial evidence.

Gelman further asserts that the ALJ did not conduct a proper two-step analysis in assessing his impairment, in accordance with 20 C.F.R. § 404.1529. Gelman, however, appears to cite to the December 2021 ALJ decision, rather than the June 2024 decision at issue here. As discussed above, the ALJ did conduct the proper two-step analysis, and Gelman's assertions to the contrary are unavailing. Tr. at 691.

Finally, Gelman asserts that the ALJ failed to properly assess his capacity to work on a function-by-function basis by not analyzing Gelman's ability to stand, walk, sit, lift, carry, reach, handle, or finger. The ALJ, however, explicitly found

11

that Gelman could "lift/carry and push/pull twenty pounds occasionally and ten pounds frequently, sit and stand/walk for six hours each in an eight-hour workday, occasionally reach overhead and frequently reach in all other directions bilaterally, occasionally climb ramps and stairs, [and] never climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl[.]" Tr. at 691. The ALJ made this determination based on Dr. Krishnan's testimony on this exact subject. *Id*. at 695–96. Thus, contrary to Gelman's assertions, the ALJ did specify Gelman's abilities on a function-by-function basis.

The ALJ reviewed the evidence in detail, including the opinions of Gelman's physicians and physical therapists, to conclude that Gelman had an RFC for light work. Gelman has not established that "no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo v. Saul*, 31 F.4th 64, 69 (2d Cir. 2022). Accordingly, the ALJ's RFC determination was supported by substantial evidence.

b. Vocational Expert

Gelman contends that the ALJ erred in relying on the vocational expert's testimony because the ALJ posed a hypothetical question to the expert which did not accurately explain Gelman's impairment. Gelman asserts that reliance on a vocational expert's response to a hypothetical question that does not include all a claimant's impairments may not constitute substantial evidence.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

The ALJ described Gelman's impairment as follows:

The claimant can lift 20 pounds occasionally, 10 pounds frequently, carry the same. And push and pull the same, sitting – sitting, standing, and walking six hours in an eight-hour day each, overhead reaching occasionally bilaterally, for all other directions with respect to reaching would be frequent, stairs and ramps occasional. Everything else –- stairs and ramps, balance, stoop, kneel, crouch, and crawl, all occasional except for the fact that it would be precluded and would never be able to climb ladders, ropes, and scaffolds, no unprotected heights or moving machinery parts.

This accords with the ALJ's findings, discussed above, concerning Gelman's impairments and his RFC. Because those findings were supported by substantial evidence, the ALJ did not err in describing Gelman's impairments to the vocational expert in those terms. Thus, the ALJ did not err in relying on the vocational expert's testimony.

### III.   Conclusion

The Court cannot find that "no reasonable factfinder could have reached the same conclusion as the ALJ." *Schillo*, 31 F.4th at 69. The ALJ's disability determination is thus supported by substantial evidence and, having found no legal

13

error, is affirmed. Accordingly, Gelman's motion is DENIED and the Commissioner's motion is GRANTED.

**SO ORDERED.**

                                               /S/ Frederic Block  
                                              FREDERIC BLOCK  
                                              Senior United States District Judge

Brooklyn, New York  
September 3, 2025